1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
                              AT SEATTLE

9

10    CAROLYN BARGE,                          CASE NO. C16-0249JLR

11                        Plaintiff,          ORDER ON MOTION TO
                                              COMPEL
12           v.

13    STATE FARM MUTUAL
      AUTOMOBILE INSURANCE
14    COMPANY,

15                        Defendant.

16                        **I.    INTRODUCTION**

17         Before the court is Plaintiff Carolyn Barge's motion to compel production of

18   Defendant State Farm Mutual Automobile Insurance Company's ("State Farm")

19   unredacted claim file.  (Mot. (Dkt. # 12).)  Specifically, Ms. Barge seeks the production

20   of six sets of documents that State Farm withheld entirely or redacted in part on the basis

21   of attorney-client privilege or the work product doctrine.  (*See id.*; Resp. (Dkt. # 13).)

22   The court has considered Ms. Barge's motion, State Farm's response in opposition to Ms.

ORDER- 1

1  Barge's motion (Resp.), Ms. Barge's reply in support of her motion (Reply (Dkt. # 15)),

2  the relevant portions of the record, and the applicable law.  Considering itself fully

3  advised,[1] the court GRANTS the motion in part, DENIES the motion in part, and

4  DEFERS ruling on the motion in part.  The court further ORDERS State Farm to submit

5  some of the disputed documents to the court for *in camera* review and competent

6  evidence regarding the date(s) on which State Farm created them no later than Monday,

7  November 14, 2016, at 4:30 p.m., as set forth more fully below.

8  ## II.  BACKGROUND

9      Ms. Barge asserts claims for underinsured motorist insurance ("UIM") benefits,

10  breach of the duty of good faith, breach of contract, violations of the Washington

11  Insurance Fair Conduct Act ("IFCA"), RCW ch. 48.30; violations of the Washington

12  Consumer Protection Act ("CPA"), RCW ch. 19.86; violations of Washington

13  Administrative Code ("WAC") claims handling regulations, WAC 284-30; and

14  negligence.  (*See* Not. of Removal (Dkt. # 1), Ex. A ("Compl.") (Dkt. # 1-1).)  Ms. Barge

15  seeks monetary damages and attorneys' fees.  (Compl. ¶¶ 5.1-5.9.)

16      Ms. Barge's claims arise from an automobile collision that occurred on February

17  13, 2012.  (*Id.* ¶ 3.1.)  Ms. Barge alleges that she suffered injuries from the collision and

18  

19  [1] It is unclear to the court whether Ms. Barge intended to request oral argument on her
   motion to compel.  Ms. Barge included a "hearing date" on the first page of her motion (Mot. at
20  1) rather than complying with the court's Local Civil Rules, which require a party requesting oral
   argument to "so indicate by including the words 'ORAL ARGUMENT REQUESTED' in the
21  caption of its motion or responsive memorandum," Local Rules W.D. Wash. LCR 7(b)(4).
   However, even if Ms. Barge had intended to request oral argument, the court determines that oral
22  argument would not be helpful to its disposition of the motion.  *See id.* ("Unless otherwise
   ordered by the court, all motions will be decided by the court without oral argument.")

ORDER- 2

1 | that she sought medical treatment.  (*Id.* ¶ 3.4.)  Ms. Barge further alleges that the driver

2 | causing the accident was "underinsured at the time of the collision."  (*Id.* ¶ 3.5.)  Ms.

3 | Barge's UIM coverage provides a $100,000.00 limit for bodily injury, a $100,000.00

4 | limit for property damage, and a $10,000.00 limit for Personal Injury Protection ("PIP")

5 | medical benefits.  (*Id.* ¶ 3.6.)  Ms. Barge contends that she is entitled to benefits under the

6 | UIM provisions of her policy (*id.* ¶ 4.3) and that State Farm has "unreasonably denied

7 | payment of benefits" to her (*id.* ¶ 4.4).

8 |   On September 5, 2014, Ms. Barge's attorney first sent a demand letter to State

9 | Farm, which demanded that State Farm pay Ms. Barge the UIM benefits outlined in her

10 | policy.  (Wakefield Decl. (Dkt. # 14) ¶ 3, Ex. C ("9/5/14 Letter").)  On December 29,

11 | 2015, pursuant to IFCA, Ms. Barge's attorney sent State Farm a letter that notified State

12 | Farm of Ms. Barge's intent to file a bad faith lawsuit 20 days after she sent the letter.  (*Id.*

13 | ¶ 2, Ex. B ("IFCA Letter").)  When State Farm did not settle with Ms. Barge for the

14 | amount she requested, Ms. Barge brought suit against State Farm in King County

15 | Superior Court on January 25, 2016.  (*See Compl.*)  State Farm removed the case to this

16 | court on February 18, 2016.  (*See* Dkt.)

17 |   On March 30, 2016, Ms. Barge served State Farm with a request for production of

18 | documents.  (Mot. at 1.)  "The [r]equest called for State Farm to produce all of its claim

19 | files pertaining to the collision which is the subject matter of this case."  (*Id.* at 1-2.)  On

20 | May 4, 2015, State Farm sent a redacted case file to Ms. Barge, along with a four-page

21 | privilege log that outlined documents State Farm withheld from production and the basis

22 | for withholding those documents.  (*Id.* at 2.)  In its initial disclosures, State Farm named

ORDER- 3

1   "State Farm claims personnel who handled and evaluated [Ms. Barge's] Personal Injury

2   Protection (PIP) and underinsured motorist (UIM) bodily injury claim." (*Id.*)  Ms. Barge

3   contends that at trial, "[o]ne can expect" that these personnel will offer their opinions

4   "based upon their training and experience and review of the claim file."  (*Id.*)

5        The parties held a telephonic conference on June 1, 2016, to "go over [State

6   Farm's] log of privileged documents."  (*Id.*); *see also* Local Rules W.D. Wash. LCR

7   37(a)(1).  They "were unable to come to an agreement" as to six items from the privilege

8   log, which total approximately 41 pages:  (1) an undated claim log with the reserve

9   amount redacted on the basis of work product prepared in anticipation of litigation

10  ("SF000036"); (2) claim logs with various dates, which State Farm withheld as work

11  product prepared in anticipation of litigation and attorney-client privileged

12  ("SF000040-46"); (3) a claim log dated November 19, 2014, with the evaluation amount

13  redacted as work product prepared in anticipation of litigation ("SF000117"); (4) claim

14  logs with various dates, with the evaluation amount redacted as work product prepared in

15  anticipation of litigation ("SF000147-51"); (5) an undated claims log, which State Farm

16  withheld as work product prepared in anticipation of litigation ("SF000190-93"); and (6)

17  an "undated injury evaluation" by Tamara Beason, which State Farm withheld as work

18  product prepared in anticipation of litigation ("SF000237-63").  (*Id.* at 2-3.)

19                            III.    ANALYSIS

20       On August 4, 2016, Ms. Barge filed this motion to compel State Farm to produce

21  the six sets of documents discussed above.  Ms. Barge argues that the withheld claim files

22  are relevant to her claims in this case (*id.* at 4-5), not work product that can be withheld

ORDER- 4

1 │ from production (*id.* at 5-9), and not protected by the attorney-client privilege (*id.* at

2 │ 10-11).[2]

3 │     State Farm counters that Ms. Barge "is not entitled to obtain State Farm's core

4 │ work product concerning its analysis, opinions, and evaluation" of Ms. Barge's claim.[3]

5 │ (Resp. at 1.)  State Farm asserts that it "certainly had a plausible basis to anticipate that

6 │ [Ms. Barge's] UIM claim was going to wind up in a lawsuit." (*Id.* at 2.)  State Farm

7 │ further claims that Ms. Barge "has failed to demonstrate any substantial need or hardship

8 │ sufficient to justify production of State Farm's core work product, its attorney-client

9 │ communications, or its documents prepared in anticipation of litigation." (*Id.*)

10 │ Specifically, State Farm contends that SF000040-46 is attorney-client privileged and that

11 │ the other five sets of documents—SF000036, SF000117, SF000147-51, SF000190-93,

12 │ and SF000237-63—are protected by the work product doctrine. (*Id.* at 6, 8-10.)

13 │

14 │     [2] Ms. Barge further argues that State Farm has waived any privilege it enjoyed "by
identifying a testifying witness/expert who relied upon [the claim files] to form opinions." (*Id.* at
15 │ 12.)  Ms. Barge cites only Federal Rule of Civil Procedure 26(a)(2)(B) and Federal Rule of
Evidence 705, both of which address expert testimony, in support of this argument. (*See id.*);
16 │ Fed. R. Civ. P. 26(a)(2)(B); Fed. R. Evid. 705.  Ms. Barge asserts that the privilege is waived
because State Farm's "insurance claims personnel who handled and evaluated [Ms. Barge's
17 │ claim] . . .[] have formed opinions about how State Farm handled this case, based upon their
training, experience[,] and review of the claim filed." (Mot. at 12.)  However, there is no
18 │ indication in the record that State Farm intends to call its claims personnel as expert witnesses in
this matter. (*See generally* Dkt.; Mot.; 11/2/16 Disclosure (Dkt. # 18); 11/7/16 Amend.
19 │ Disclosure (Dkt. # 20).)  Accordingly, the court determines that this argument provides no basis
for granting Ms. Barge's motion to compel the six sets of documents.

20 │     [3] State Farm does not dispute that the materials Ms. Barge seeks are relevant to her case.
(*See* Mot. at 4-5 (asserting that the requested documents are relevant to Ms. Barge's bad-faith
insurance claim); Resp. at 4-11 (citing without discussion Federal Rule of Civil Procedure
21 │ 26(b)(1), which allows discovery of relevant, nonprivileged matters)); Fed. R. Civ. P. 26(b)(1)
("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's
22 │ claim or defense and proportional to the needs of the case . . . .").

**A.    State Farm's Claims of Attorney-Client Privilege**

State Farm argues that the "redacted notations in SF000040-46 are communications between State Farm and its attorneys in this matter made after plaintiff's 20-day IFCA notice was received on December 29, 2015 and just before or after" State Farm retained counsel.  (Resp. at 6.)  State Farm contends that "[t]hese entries reference matters of pre-trial strategy and tactics" (*id.*) and provided redacted copies of the documents to the court (Wakefield Decl. ¶ 7, Ex. E at 26-32).  Scott Wakefield, State Farm's counsel, represents to the court that these documents "contain litigation-related communications between State Farm and the undersigned [Mr. Wakefield] or staff from [Mr. Wakefield's] office about this very case shortly before or after [Mr. Wakefield] was retained as counsel for State Farm in this matter."  (Wakefield Decl. ¶ 6.)  State Farm contends that Ms. Barge fails to meet the standard under Washington law for production of attorney-client communications in a bad-faith insurance lawsuit.  (*See* Resp. at 8 (stating that Ms. Barge fails "to demonstrate that any reasonable person would have a reasonable belief that an act of bad faith tantamount to civil fraud has occurred in this lawsuit").)

Ms. Barge claims that State Farm cannot meet its burden of showing that its attorneys were not engaged in the quasi-fiduciary tasks of investigating, evaluating, or processing Ms. Barge's claim when the communications occurred.  (*See* Mot. at 11; Reply at 2, 4.)  Ms. Barge further argues that State Farm has waived any privilege as to the claim file because Ms. Barge "has the right to review what State Farm's witnesses relied upon in evaluating Ms. Barge's UIM claim, and to share that information with [Ms.

1   Barge's] experts so that they will be in a position to rebut the defense witness's

2   conclusions." (Mot. at 12.)

3         "The attorney-client privilege has been recognized as 'the oldest of the privileges

4   for confidential communications known to the common law.'" *Gomez v. Vernon*, 255

5   F.3d 1118, 1131 (9th Cir. 2001) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389

6   (1981)).  Under Washington law, however, the attorney-client privilege is presumptively

7    inapplicable in a first-party insurance bad faith action.[4]  *Cedell v. Farmers Ins. Co. of*

8   *Wash.*, 295 P.3d 239, 246 (Wash. 2013).  *Cedell* creates a "presumption that there is no

9   attorney-client privilege relevant between the insured and the insurer in the claims

10  adjusting process, and that the attorney-client . . . privilege[ is] generally not relevant."

11  *Id.*  Nonetheless, an insurer may overcome *Cedell*'s "presumption of discoverability by

12  showing its attorney was not engaged in the quasi-fiduciary tasks of investigation and

13  evaluating or processing the claim, but instead in providing the insurer with counsel as to

14  its own liability:  for example, whether or not coverage exists under the law." *Id.*

15        But even if an insurer demonstrates that an attorney was not serving in a quasi-

16  fiduciary role, an insured may still be able to pierce the insurer's assertion of attorney-

17  client privilege.  *MKB Constructors*, 2014 WL 2526901, at *4.  If the insured asserts that

18  the insurer has engaged "in an act of bad faith tantamount to civil fraud" and makes "a

19  showing that a reasonable person would have a reasonable belief that an act of bad faith

20

21        [4] Matters of attorney-client privilege are governed by state law.  *See MKB Constructors v. Am. Zurich Ins. Co.*, C13-0611JLR, 2014 WL 2526901, at *6 (W.D. Wash. May 27, 2014).

22  (quoting Fed. R. Evid. 501) ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.").

1   has occurred" or that an insurer has engaged in a "bad faith attempt to defeat a

2   meritorious claim," then the insurer waives the privilege.  *See Cedell*, 295 P.3d at 246-47.

3   Something more than an honest disagreement between the insurer and the insured about

4   coverage under the policy must be at play.  *See MKB Constructors*, 2014 WL 2526901, at

5   *5.

6         Although State Farm is correct that *in camera* review is not necessary for a court

7   to determine that a party has overcome the *Cedell* presumption (*see* Resp. at 7), *in*

8   *camera* review is one tool at the court's disposal for determining whether the disputed

9   documents are in fact privileged, *MKB Constructor*s, 2014 WL 2526901, at *7 ("[T]he

10  court may conduct *in camera* reviews as described by the Washington Supreme Court in

11  *Cedell*, but it is not bound to do so.").

12        Here, it would be difficult to fully resolve this dispute without conducting *in*

13  *camera* review of SF000040-46.  State Farm has provided the court with the redacted

14  documents and its counsel's declaration, but other than in its response to Ms. Barge's

15  motion, State Farm makes no direct representations that its attorneys were not engaged in

16  quasi-fiduciary activities at the time of the communications.  (*See* Resp.; Wakefield

17  Decl.)  In addition, the court cannot determine from the redacted notes that the documents

18  contain attorney-client communications unrelated to State Farm's quasi-fiduciary duty.

19  (*See* Wakefield Decl. Ex. E.)  In short, based on the record before the court, the court

20  cannot readily conclude whether the communications at issue involve "the quasi-

21  fiduciary tasks of investigation and evaluating or processing the claim" or "providing the

22  insurer with counsel as to its own liability."  *See Cedell*, 295 P.3d at 246-47.

ORDER- 8

1  Accordingly, State Farm must submit the SF000040-46 documents to the court for *in*

2  *camera* review no later than Monday, November 14, 2016 at 4:30 p.m.  At this time, the

3  court reserves ruling on whether the SF000040-46 documents protected by the attorney-

4  client privilege and will separately rule on these documents after the court conducts the

5  necessary review.

6  **B.      State Farm's Claim of Work Product Doctrine**

7        State Farm next argues that the five other sets of documents contain "its claims

8  personnel's evaluation, investigation, and opinions about the value of [Ms. Barge's]

9  personal injury claim" and "are protected work product prepared in anticipation of this

10  very lawsuit."  (Resp. at 8 (citing Wakefield Decl. ¶ 6) ("Most of these redacted/withheld

11  documents contain the mental impressions and opinions of State Farm claims personnel

12  about the value of the plaintiff's personal injury claim arising from the motor vehicle

13  accident at issue in this lawsuit for UIM benefits or 'reserve' estimates . . . .").)  Some of

14  the documents include State Farm's reserve and evaluation amounts, while others are

15  summaries of issues related to Ms. Barge's claim.  (*See* Wakefield Decl. ¶ 7, Ex. E;

16  Wakefield Decl. ¶ 8.)  State Farm further argues that Ms. Barge "has not demonstrated

17  any undue hardship or substantial need for this information in her motion to compel."

18  (Resp. at 9.)  State Farm contends that Ms. Barge "already has 99% of State Farm's claim

19  materials relating to her UIM claim" and "can depose . . . the State Farm claims adjuster

20  who investigated and evaluated [Ms. Barge's] UIM claim."  (*Id.*)

21        Ms. Barge counters that these documents are not work product because they were

22  "created in the ordinary course of business" and therefore were not prepared in

ORDER- 9

1   anticipation of litigation.  (Mot. at 6.)  Ms. Barge notes that "in all of the documents

2   listed in State Farm's 'Privilege Log' that were either redacted or not produced, there are

3   either no dates listed or the dates are prior to this litigation."  (*Id.*)  She contends that it is

4   "disingenuous" of State Farm to claim that the documents were prepared in anticipation

5   of litigation.  (*Id.*)  She argues that she is entitled to the claimed work product because

6   "[t]here is nowhere else [Ms. Barge] could go to find out what State Farm did in

7   adjusting the UIM claim, and what its mental impressions, subjective views, and

8   intentions were."  (*Id.* at 9.)

9          Although the attorney-client privilege is a substantive evidentiary privilege, the

10  work product doctrine is a procedural immunity governed by Federal Rule of Civil

11  Procedure 26(b)(3).  *Johnson v. Allstate Ins. Co.*, No. C11-0927RSM, 2012 WL 707160,

12  at *1 (W.D. Wash. Mar. 5, 2012); Fed. R. Civ. P. 26(b)(3); *see also United States v.*

13  *Nobles*, 422 U.S. 225, 246 (1975) ("[T]he 'work product' doctrine [operates] solely as a

14  limitation on pretrial discovery and not as a qualified evidentiary privilege."); *Santana v.*

15  *Holiday Inns, Inc.*, 686 F.2d 736, 740 (9th Cir. 1982) (noting that where a federal rule of

16  procedure covers a rule of practice, the rule governs in a federal diversity case even in the

17  face of a contrary state rule).  Therefore, although Washington law applies to claims of

18  attorney-client privilege, federal law applies to claims of work product protection.  *Tubar*

19  *v. Clift*, No. C05-1154JCC, 2007 WL 30872, at *3 (W.D. Wash. Jan. 4, 2007) ("[I]n

20  cases involving the attorney work product doctrine, federal law controls in all

21  instances.").

22  //

1    The work product doctrine is a qualified protection limiting discovery of

2  "documents and tangible things" prepared by a party or his or her representative in

3  anticipation of litigation or trial.  *Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Ariz.*,

4  881 F.2d 1486, 1494 (9th Cir. 1989); *see also Upjohn Co.*, 449 U.S. at 397-402; Fed. R.

5  Civ. P. 26(b)(3).  The party claiming work product protection bears the burden of

6  establishing that the work product doctrine applies.  *United States v. Richey*, 632 F.3d

7  559, 566 (9th Cir. 2011).  A party may obtain discovery of work product only on a

8  showing of "substantial need" and an inability to obtain equivalent information from

9  other sources.  Fed. R. Civ. P. 26(b)(3)(A)(ii).  Even when a court orders disclosure of

10 work product, "it must protect against disclosure of the mental impressions, conclusion,

11 opinions, or legal theories of a party's attorney or other representative concerning the

12 litigation."  Fed. R. Civ. P. 26(b)(3)(B).  These materials—otherwise known as "opinion"

13 work product—represent the "core types of work product" that the doctrine was designed

14 to protect.  *See Republic of Ecuador v. Mackay*, 742 F.3d 860, 870 n.3 (9th Cir. 2014).

15    An insured "seeking opinion work product must make a showing beyond the

16 substantial need/undue hardship test required . . . for non-opinion work product."

17 *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992).  A party

18 seeking opinion work product must demonstrate that the "mental impressions are *at issue*

19 and their need for the material is compelling."  *Id.* (italics in original).  At a minimum,

20 compelling need requires that the information sought is not available elsewhere or

21 through the testimony of another witness.  *See id.* at 578 ("[I]n bad faith settlement cases,

22 insurers may call their adjusters to testify to their opinions as to the lack of viability of

1  the underlying claim[, but w]hen an insurer chooses to remain mute on the subject, the

2  plaintiff is not foreclosed from developing the same evidence.").

3       In federal court, opinion work product "is virtually undiscoverable." *See Mackay*,

4  742 F.3d at 870 n.3.  In the context of a bad faith settlement insurance coverage action,

5  the Ninth Circuit has found that "on a case-by-case basis" an insured may be able to

6  obtain opinion work product.  *Holmgren*, 976 F.2d at 577.  This court has previously

7  agreed that "reserve information that was created in anticipation of litigation is protected

8  by the work product doctrine."  *Schreib v. Am. Family Mut. Ins. Co.*, 304 F.R.D. 282, 285

9  (W.D. Wash. 2014).  To qualify for work-product protection, documents must (1) be

10  "prepared in anticipation of litigation or for trial," and (2) be prepared "by or for another

11  party or by or for that other party's representative."  *Richey*, 632 F.3d at 567.  Where a

12  document was not prepared exclusively for litigation, the Ninth Circuit applies the

13  "because of" test.  *Id.*  Under this test, documents that serve a dual purpose are

14  considered prepared in anticipation of litigation if "in light of the nature of the document

15  and the factual situation in the particular case, the document can be fairly said to have

16  been prepared or obtained because of the prospect of litigation."  *Id.*

17       1.  Reserve and Evaluation Amounts

18       At the outset, the court notes that there is a split of authority as to whether reserve

19  and evaluation amounts are relevant in bad-faith insurance cases.  *See Schreib*, 304

20  F.R.D. at 285 (collecting cases).  This court has noted, however, "that loss reserve

21  information regarding a specific insurance claim may be relevant in bad faith insurance

22  cases."  *Id.*  Moreover, State Farm does not argue that the reserve and evaluation

ORDER- 12

1 information Ms. Barge seeks is not relevant under Federal Rule of Civil

2 Procedure 26.  (*See generally* Resp.)  Therefore, the court analyzes only whether this

3 information is protected by the work product doctrine.

4       State Farm claims that its documents regarding reserve and evaluation amounts are

5 entitled to work product protection because they were prepared in anticipation of

6 litigation.  (Resp. at 8.)  State Farm contends that as early as September 5, 2014, when

7 Ms. Barge's counsel sent State Farm a demand letter for the UIM benefits, the parties

8 anticipated litigation.  (*See* Resp. at 6; 9/5/14 Letter.)  In addition, Ms. Barge's counsel

9 sent the IFCA 20-day notification letter to State Farm on December 29, 2015.  (IFCA

10 Letter.)  Because these letters notified State Farm of the potential for suit, the court

11 concludes that it was reasonable for State Farm to anticipate litigation once it received

12 them.  *See Schreib*, 304 F.R.D. at 286; *Johnson v. Allstate Prop. & Cas. Ins. Co.*, No.

13 C14-5064KLS, 2014 WL 4293967, at *5, *8 (W.D. Wash. Aug. 29, 2014).

14       "Because insurers in Washington State are required by statute to maintain loss

15 reserves in the ordinary course of business," *see* RCW 48.12.030(2), .090, however, loss

16 reserve documents are "'not prepared exclusively for litigation,'" *Schreib*, 304 F.R.D. at

17 286 (quoting *Richey*, 632 F.3d at 568).  But when litigation is pending, "'the purpose for

18 setting the loss reserve [goes] beyond its ordinary course of investigating and handling

19 claims and [is] a financial evaluation of the claim from the standpoint of pending or

20 anticipated litigation.'"  *Id.* (quoting *Nicholas v. Bituminous Cas. Corp.*, 235 F.R.D. 325,

21 332 (N.D. W. Va. 2006)) (alterations in original).  State Farm contends that its reserve

22 and evaluation amounts "contain the mental impressions and opinions of State Farm

1  claims personnel about the value of [Ms. Barge's] personal injury claim arising from the

2  motor vehicle accident at issue." (Wakefield Decl. ¶ 6.)  State Farm further contends that

3  materials were "prepared in anticipation of this very lawsuit." (Resp. at 8.)

4       The court finds that, taking into account the totality of the circumstances, three of

5  the documents at issue "can be fairly said to have been prepared or obtained because of

6  the prospect of litigation." *Richey*, 632 F.3d at 567.  Of the four documents that State

7  Farm has put before the court and claims are subject to the work product doctrine, three

8  of the documents—SF000117, SF000147-51, and SF000190[5]—are protected by the work

9  product doctrine.  State Farm prepared the three documents after Ms. Barge sent the

10  demand letter or the IFCA letter to State Farm:  State Farm prepared SF000117 on

11  November 19, 2014, over two months after Ms. Barge sent the demand letter to State

12  Farm; State Farm made the entries in SF000147-151 between November 11, 2014, and

13  February 11, 2015, after Ms. Barge sent both letters and, in some instances, after she

14  instituted the instant litigation; and State Farm prepared SF000190 on February 17, 2016,

15  after Ms. Barge filed her complaint. (*See* Wakefield Decl. Ex. E at 33-38.)  Therefore,

16  given State Farm's representations that the reserve amounts are based on the opinions and

17  evaluation of State Farm personnel after State Farm reasonably contemplated litigation in

18  this case, State Farm has properly withheld these documents under the work product

19  doctrine.

20  

21       [5] State Farm discusses SF000190 separately from SF000191-93, even though the pages
were discussed as one document in both State Farm's privilege log and Ms. Barge's motion.
22  (Mot. at 3; McClay Decl. (Dkt. # 12-1) ¶ 4, Ex. 2.)  The court likewise addresses SF000190
separately in considering whether these documents are protected by the work product doctrine.

1    In addition, the court finds that Ms. Barge has not met her burden of

2  demonstrating that she has a compelling need for this information such that the work

3  product must be disclosed. *See Holmgren*, 976 F.2d at 578 (noting that a plaintiff's need

4  for information varies between "insurers may call their adjusters to testify to their

5  opinions as to the lack of viability of the underlying claim" and "[w]hen an insurer

6  chooses to remain mute on the subject"). Ms. Barge's conclusory statement that she

7  cannot access State Farm's "mental impressions, subjective views, and intentions" (Mot.

8  at 9) in evaluating her claim elsewhere ignores, for example, that she can depose State

9  Farm's claims personnel (Resp. at 9-10; *see also* Reply at 5 (arguing that Ms. Barge is

10  entitled to the claims file even though the "claim adjuster" may be deposed).[6]

11    The court finds that SF000036 is not covered by the work product doctrine and

12  that State Farm must produce this document. SF000036 includes a reserve amount

13  entered on August 5, 2013, well before either of the two events State Farm contends led it

14  to anticipate litigation. (*See* Wakefield Decl. Ex. E at 25.) Accordingly, State Farm has

15  not met its burden of showing that State Farm created the document at a time when it

16  anticipated litigation. Therefore, no later than Monday, November 14, 2016, at 4:30 p.m.

17  State Farm must produce to Ms. Barge an unredacted version of SF000036.

18  //

19  //

20

21    [6] At this time, the court does not address Ms. Barge's argument that "[i]f [State Farm's] claims adjuster] refreshes her recollection [during a deposition] via the claim file, [Ms. Barge] is entitled to the file" under Federal Rule of Evidence 612. (Reply at 5.) There is no indication

22  that Ms. Barge has yet deposed State Farm's claims personnel. (*See generally* Mot.; Reply.)

ORDER- 15

1     2.   <u>Summaries</u>

2       Finally, the court concludes that it cannot make a determination whether the other

3 two sets of documents at issue—SF000191-93 and SF000237-63—are protected from

4 discovery as work product. State Farm contends that SF000191-93 "is a comprehensive

5 summary of State Farm's claims personnel's analysis of the liability medical

6 care/expenses, and general damages range of [Ms. Barge's] personal injury claim" and is

7 "core work product." (Wakefield Decl. ¶ 8.) In addition, State Farm avers that

8 SF000237-63 contains "pages from State Farm's 'Injury Evaluation' format for analyzing

9 personal injury claims that break down into discrete categories" and contain "information

10 that the claims representative's investigation of the plaintiff's claim has revealed." (*Id.*)

11 Because State Farm withheld these documents in their entirety, State Farm has not

12 provided any portion of the documents to the court. (*See id.* ¶ 5.)

13       Without viewing the underlying documents, the court cannot reasonably assess

14 whether and to what extent the documents contain protected work product. In addition,

15 State Farm's privilege log states that these documents are undated. (McClay Decl. Ex.

16 2.) Accordingly, the court has no way to determine at this time if the documents

17 constitute work product and were created in anticipation of litigation. The court orders

18 State Farm to submit SF000191-93 and SF000237-63 to the court for *in camera* review

19 no later than Monday, November 14, 2016, at 4:30 p.m. In addition, State Farm must

20 supplement its response to Ms. Barge's motion to compel by filing on the docket no later

21 than Monday, November 14, 2016, at 4:30 p.m. a declaration or other competent

22 evidence regarding the date(s) on which State Farm prepared these documents. At this

1  time, the court reserves ruling on whether the documents in SF000191-93 and

2  SF000237-63 are protected by the work product doctrine and will rule separately as to

3  these documents after it conducts the necessary review.

### IV.    CONCLUSION

5  For the foregoing reasons, the court GRANTS in part and DENIES in part Ms.

6  Barge's motion to compel (Dkt. # 12) and DEFERS ruling in part on the motion (Dkt.

7  # 12).  The court further ORDERS State Farm to submit documents SF000040-46 and

8  SF000237-63 to the court no later than Monday, November 14, 2016, at 4:30 p.m. for *in*

9  *camera* review.  In addition, State Farm must supplement its response to Ms. Barge's

10  motion to compel by filing on the docket no later than Monday, November 14, 2016, at

11  4:30 p.m. a declaration or other competent evidence regarding the date(s) on which State

12  Farm prepared the documents in SF000191-93 and SF000237-63.  The court reserves

13  ruling on whether the documents comprising SF000040-46, SF000191-93, and

14  SF000237-63 may properly be withheld from production until after the court conducts the

15  *in camera* review.

16  Dated this 8th day of November, 2016.

17

18  _____

19  JAMES L. ROBART
    United States District Judge

20

21

22

ORDER- 17